**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LAUNEY BECKHAM, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-2215** |
| **LOUIS JOSEPH BRUNO, IV, ET AL.** | **SECTION "O"** |

# ORDER AND REASONS

Before the Court is a motion[1] for temporary restraining order and preliminary injunction and accompanying request for expedited hearing by Plaintiffs Launey Beckham and Jessica Beckham, individually, and each in their capacity as owners of H&E Comfort Services LLC, individually and derivatively. The Beckhams name four defendants in their first amended complaint: Louis Joseph Bruno, IV, Landon Brewer, Platform Partner Holdings, LLC, and ServiceTitan, Inc. There is no indication in the record that the defendants have been served with the complaint, the amended complaint, or the motion. Consideration of Plaintiffs' motion is thus *ex parte*. Plaintiffs fail to carry their heavy burden to demonstrate entitlement to extraordinary relief in the form of an unnoticed temporary restraining order, or at this time for preliminary injunctive relief. Accordingly, Plaintiffs' motion is **DENIED WITHOUT PREJUDICE**. In compliance with the Federal Rules, Local Rules, and applicable case law as set forth below, Plaintiffs may file a renewed request for injunctive relief and seek expedited hearing thereon.

---

[1] ECF No. 8.

## I. BACKGROUND

This litigation arises from Plaintiffs' claim that they were duped by Defendants Bruno, Brewer, and Platform Partner Holdings, LLC ("PPH") into a partnership to reorganize their company, H&E Comfort Services LLC ("H&E"), and that those same defendants have breached the parties' agreements by taking from H&E instead of contributing. The following summary is drawn from the (unverified) first amended complaint.

Launey and Jessica Beckham own H&E, an HVAC, electrical, and plumbing services company serving the New Orleans metropolitan area. Before July 2023, the Beckhams owned 100% of H&E, which was worth $1.9 million. The Beckhams sought opportunities to boost H&E's sales; they also wanted a retirement strategy.[2]

Sometime before July 10, 2023, the Beckhams discussed restructuring H&E with Bruno and Brewer. As a result of these discussions, two agreements were executed on June 29, 2023 and July 20, 2023, respectively: (1) The Partnership Agreement Binding Term Sheet, which outlined the terms of H&E's restructuring and the parties' respective obligations; and (2) The Limited Liability Company Operating Agreement of Shape Service Partners HECS LLC. According to the Plaintiffs' allegations, H&E restructured its ownership as contemplated by the Shape Operating Agreement and Term Sheet when the Beckhams on July 10, 2023 executed an Assignment and Assumption of Units in H&E, which contributed 100% of the issued and outstanding ownership interests of H&E to Shape.[3]

---

[2] ECF No. 7 ¶¶ 9-10, 13, 24.
[3] *Id.* ¶¶ 9-12, 17.

Bruno and Brewer drafted the Term Sheet, which is governed by Florida law. The Shape Operating Agreement incorporates the Term Sheet, identifies the members of Shape as Beckham and CFM Business Trust, and identifies Brewer as Shape's manager. The Term Sheet obliged Brewer and Bruno to contribute intellectual property (platform IP) and be responsible for building and managing contributed platform systems of recruiting and HR, sales, marketing, operations, payroll fundings and departments, treasury, finance, M&A, channel expansion, growth models, and relationship capital. According to Plaintiffs, the requirement that Defendants contribute platform IP was critical because, absent such a contribution, PPH would have received a 47% interest in Shape for nothing, thereby incurring a significant tax liability.[4]

Unfortunately, according to Plaintiffs, Defendants never intended to contribute anything to the business and, in fact, breached the terms of the Term Sheet and the Shape Operating Agreement. "From the outset," Plaintiffs allege, "Defendants' approach bore the hallmarks of a broader scheme directed at distressed business owners in the home service sector who were seeking an exit, attempting to retire, and/or facing financial pressure." In addition to duping Plaintiffs into these agreements and breaching them, Plaintiffs broadly allege, Defendants have diverted and misused personal funds, breached their fiduciary duties, placed themselves on H&E's payroll, redirected company cash flow, intentionally failed to pay vendors, suppliers, and creditors, and other acts detrimental to Plaintiffs.[5]

---

[4] *Id.* ¶¶ 18-24.
[5] *Id.* ¶¶ 23, 26-35.

Plaintiffs further allege that H&E utilizes ServiceTitan, Inc.'s cloud-based software services in connection with running its business, and that H&E's business data is stored with ServiceTitan in connection with H&E's account identifier, Tenant ID 763311679. In August 2025, H&E and ServiceTitan entered into an additional services order for subscriptions supporting H&E's operations. That order identifies H&E (rather than PPH) as the customer. "ServiceTitan . . . dealt exclusively with H&E as the customer whose business generated the records at issue, while also providing services through its arrangement with PPH."[6]

ServiceTitan announced that it had terminated its agreement with PPH. According to Plaintiffs, H&E requires urgent resolution of its rights to preserve and enable a usable export of its records to maintain customer service, collect receivables, and continue operating H&E. It is alleged that H&E has requested that ServiceTitan provide an export and release of H&E Data to H&E, but ServiceTitan declined to complete the requested release unless it receives authorization signed both on behalf of H&E and the defendants. Plaintiffs allege that the defendants "have refused to execute the requested authorization." According to Plaintiffs, this refusal to cooperate constitutes breaches of the parties' agreements, of good faith obligations, and of managerial fiduciary duties.[7]

ServiceTitan advised H&E that the H&E Account receives service under SeviceTitan's agreement with PPH but that its agreement with PPH will expire on November 30, 2026, will not be renewed, and PPH has been notified. To continue

[6] *Id.* ¶¶ 37A-37A(4).
[7] *Id.* ¶¶ 37A(5)-37E.

using ServiceTitan's service after November 30, H&E was advised it would need a new agreement but because the H&E Account is currently provided through PPH, ServiceTitan indicated that a new agreement may require written confirmation of authority from parties with rights in the account, which may include PPH or its affiliates.[8]

Plaintiffs advance additional allegations alluding to potential disruption of H&E's business. With respect to H&E's Hancock Whitney bank accounts and its Intuit accounting account, Plaintiffs appear to allege that they learned from reviewing their bank and/or accounting records that H&E's accounting service platform environment was changed from QuickBooks Online Advanced to Intuit Enterprise Suite without Plaintiffs' approval (albeit using the same Company ID). Upon information and belief, Plaintiffs allege that Defendants caused or directed this unapproved change by exercising the account access and administrative authority available to them through the platform relationship. Plaintiffs allege that these unauthorized changes "demonstrate[] the need to protect H&E's continued access to its accounting records and payroll functions." Plaintiffs worry that there is "a substantial risk of further interference with account access, payroll, customer receipts, and business records" and they "seek to prevent further unilateral changes and disruption to these specifically identified accounts while their claims for rescission and breaches of contractual and fiduciary duties are adjudicated."[9]

---

[8] *Id.* ¶¶ 37I-37J.
[9] *Id.* ¶¶ 37M-37V.

On September 30, 2026, Plaintiffs filed an original complaint against Bruno, Brewer, and PPH, asserting seven claims.[10] Summons issued but—according to the docket sheet—to date, has not been returned.[11] Plaintiffs filed a first amended complaint, adding ServiceTitan, Inc. as a defendant, supplementing their allegations, and adding four claims to total 11: breach of contract, rescission, breach of duty of good faith and fair dealing, fraudulent inducement (against PPH), civil conspiracy to commit fraudulent inducement, member derivative claim (breach of fiduciary duties against Defendant Brewer), constructive trust, declaratory relief concerning H&E data, injunctive relief to compel authorization (against all defendants except ServiceTitan, injunctive relief to release and preserve H&E data (against ServiceTitan), injunctive relief to prevent interference with H&E's Whitney and Inuit accounts (against all defendants except ServiceTitan).[12]

Plaintiffs now seek a temporary restraining order as well as preliminary injunctive relief and expedited consideration.[13]

## II. LAW AND ANALYSIS

Plaintiffs request that the Court issue a temporary restraining order without notice and a preliminary injunction following an expedited hearing. Plaintiffs fail to satisfy their burden for issuance of a TRO without notice and otherwise, on the present briefing, fail to carry their burden on the four prerequisites to warrant extraordinary preliminary injunctive relief.

---

[10] ECF No. 1.
[11] ECF No. 6.
[12] ECF No. 7. No summons have issued on this amended complaint.
[13] ECF No. 8. No certificate of service accompanies the motion.

### A. Legal Standards

Federal Rule of Civil Procedure 65 governs requests for injunctive relief, including Plaintiffs' request for a temporary restraining order. *See* FED. R. CIV. P. 65(a)–(b); *see also Parker v. Ryan*, 960 F.2d 543, 545 (5th Cir. 1992) ("[T]he requirements of [R]ule 65 apply to all injunctions.") (internal citation omitted).

#### 1. The Notice Requirement

Rule 65(a)(1) states that "[n]o preliminary injunction shall be issued without notice to the adverse party." This notice requirement "has constitutional as well as procedural dimensions; it implies 'a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.'" *Parker*, 960 F.2d at 544 n.1 (citations omitted). A temporary restraining order may be granted *ex parte* (without prior notice) under limited circumstances:

> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

#### 2. The Four Elements

"Temporary restraining orders are 'extraordinary relief and rarely issued.'" *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644 (N.D. Tex. 2021) (quoting *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999)). As the parties seeking a temporary restraining order, Plaintiffs must "establish the same

four elements for obtaining a preliminary injunction." *Greer's Ranch Café*, 540 F. Supp. 3d at 645 (internal citation and quotation marks omitted). To show entitlement to this extraordinary remedy, that means Plaintiffs must show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the [temporary restraining order] is not issued, (3) that the threatened injury if the [temporary restraining order] is denied outweighs any harm that will result if the [temporary restraining order] is granted, and (4) that the grant of a[] [temporary restraining order] will not disserve the public interest." *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (internal citation and quotation marks omitted). "Failure to establish any of these elements results in the denial of the motion" for a temporary restraining order. *Sacal-Micha v. Longoria*, 449 F. Supp. 3d 656, 662 (S.D. Tex. 2020) (citing *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003)). Ultimately, as the parties seeking a temporary restraining order, Plaintiffs must "unequivocally show the need for its issuance." *Id.* (citing *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997)).

This is so because such preliminary relief is "an extraordinary remedy" that a court should not grant unless the applicant "has clearly carried the burden of persuasion" on all four requirements. *Bluefield Water Ass'n Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009) (internal quotation marks omitted). Granting such relief "'is to be treated as the exception rather than the rule.'" *House the Homeless v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

The temporary restraining order Plaintiffs seek "is simply a highly accelerated and temporary form of preliminary injunctive relief[.]" *Greer's Ranch Café*, 540 F. Supp. 3d at 644–45 (internal citation and quotation marks omitted). To that end, temporary restraining orders are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction[.]" 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2951 (3d ed. June 2024 update). The Court's decision to grant or deny injunctive relief, including Plaintiffs' request for a temporary restraining order, is committed to the Court's discretion. *See Miss. Power & Light Co.*, 760 F.2d at 621.

**B. Plaintiffs Fail to Demonstrate Entitlement to a TRO or Preliminary Injunction.**

Applying those principles here, Plaintiffs' motion must be denied without prejudice because they fail to show that they complied with the requisite notice provisions, including that *immediate* relief is necessary and warranted to prevent *irreparable* injury, and further because they fail to show clear entitlement to such extraordinary relief.

**1. Plaintiffs failed to comply with Rule 65(b)(1).**

As a threshold matter, Plaintiffs fail to comply with Rule 65(b)(1)'s basic but fundamental requirements concerning issuing TROs without notice. There is nothing in the record indicating that Plaintiffs' attorney has made any efforts to give notice to Defendants, nor are reasons provided as to why such notice should not be required. Specifically, there is no indication in the record that the original or amended complaints were ever served on any defendant. What is more, there is no indication

that counsel for Plaintiffs have attempted to serve or notify Defendants concerning their request for extraordinary relief—not even a certificate of service accompanies Plaintiffs' filings. Absent written certification of efforts made to provide notice (or reasons why it should not be required), the Court may not issue a temporary restraining order. *See* FED. R. CIV. P. 65(b)(1).

Even if Plaintiffs had certified what efforts had been made to notify Defendants, Rule 65(b)(1) authorizes issuance of a temporary restraining order without notice only where specific sworn facts "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" *Id.* Plaintiffs have failed to satisfy this essential prerequisite. Though Plaintiffs indicate concern regarding H&E's ability to access its data in ServiceTitan, for example, Jessica Beckham's sworn assertions fail to implicate the immediacy or irreparable injury requirements. Ms. Beckham's assertions that certain changes to accounting or payroll functions of H&E's Intuit account "would interfere" with business operations and that the transition from Quickbooks to Enterprise Suite "caused [her] concern about further changes affecting H&E's ability to operate" are generalized concerns that do not implicate the immediacy or irreparable injury requirements. Ms. Beckham's assertions and concerns regarding H&E's data being rendered inaccessible by ServiceTitan by the end of this month come closer in relative terms to meeting the immediacy requirement but fall short of satisfying it, considering that is over three weeks away.

Likewise, Ms. Beckham's assertions of harm stop short of meeting "irreparability" insofar as she fails to indicate that H&E's data will be irretrievable or deleted, as opposed to access being hindered until authorization is restored or provided. Notably, Ms. Beckham asserts only that "H&E has not obtained the authorization required to complete that process [an export from ServiceTitan of H&E's operating records]."[14] Critically absent from the record are specific sworn facts showing that immediate and irreparable injury will ensue to Plaintiffs before the adverse parties can be heard in opposition. Accordingly, Plaintiffs fail to satisfy Rule 65(b)(1)(A) and (B). Denying Plaintiffs' application for a temporary restraining order is warranted for this reason alone.

**2. Plaintiffs fail to clearly carry the burden on the four elements for injunctive relief.**

Even if notice had been provided to Defendants or Rule 65(b)(1) was otherwise satisfied, the current briefing offered to support Plaintiffs' request for TRO and preliminary injunction is inadequate to support injunctive relief. Plaintiffs pay only lip service to the four essential elements for obtaining such extraordinary relief, leaving the Court to speculate whether Plaintiffs can offer legal and evidentiary support for their request.

First, Plaintiffs argue that they "have a substantial likelihood of success." But they cite no law, offer no briefing on the merits of any of their claims, and their proffered evidence does not appear to substantiate their substantive claims. The only

[14] ECF No. 8-2 ¶ 35. The unverified first amended complaint alleges that Defendants "have refused to execute the requested authorization." ECF No. 7 ¶ 37D.

support for Plaintiffs' request for injunctive relief comes in the form of unverified allegations in Plaintiffs' first amended complaint and in Ms. Beckham's affidavit to which certain emails and account information are attached.[15] Rather than briefing persuasive authority, or citing to evidence in the record, Plaintiffs argue, for example:

> The Term Sheet expressly assigns responsibility for payroll funding, treasury, finance, and platform integration. Plaintiffs allege that the Original Defendants failed to fulfill those obligations and used their claimed platform authority to direct an unapproved change to H&E's accounting environment. The requested injunction would protect the financial functions those Original Defendants undertook to support while the Court adjudicates Plaintiffs' contract and rescission claims.[16]

The Court is left to speculate whether Plaintiffs predicate their request for injunctive relief on their breach of contract claim and, if so, what provisions of the contract(s) are implicated/were breached, and how Plaintiffs will succeed in proving each element of their claim under whichever state's law applies.[17] Notably, the allegations in the first amended complaint concerning breach of contract focus most abstractly on Plaintiffs "hav[ing] been damaged by Defendants' breaches of the parties' agreements in that, among other things, they have essentially given away 47% ownership, including all voting rights, of their business without getting the promised and bargained-for consideration from Defendants[.]"[18] In their motion seeking injunctive relief, Plaintiffs fail to connect their more immediate concerns regarding

---

[15] The contracts between Plaintiffs and Defendants are neither attached to the amended complaint nor the motion or affidavit.

[16] ECF No. 8-1 at 7.

[17] The parties' alleged agreements are not attached to the complaint, first amended complaint or motion and Plaintiffs selectively suggest only certain provisions of those contracts. Plaintiffs allude to a choice of Florida law to govern one of the contracts but fail to suggest which substantive law may apply to their substantive claims.

[18] ECF No. 7 ¶ 42.

Defendants' "change to H&E's accounting environment" to how Plaintiffs will succeed on the merits of their breach of contract claim. That is, insofar as Plaintiffs broadly articulate concerns about Defendants' conduct, they fail to indicate that or how Defendants' conduct constitutes a breach of the parties' agreements. The Court is unable to assess whether Plaintiffs have any likelihood of succeeding on the merits of any claim necessary for preliminary injunctive relief. Failing to demonstrate a substantial likelihood of success on the merits of any claim, Plaintiffs fail to demonstrate entitlement to injunctive relief. *See Slaughter v. Atkins*, 396 F. App'x 984, 988–89 (5th Cir. 2010) (per curiam) (affirming district court's denial of a preliminary injunction where movant presented "no evidence" as to a component of the claim).

Second, Plaintiffs argue that the threatened injury is irreparable. On the present briefing, however, Plaintiffs' argument is legally insufficient to establish that they would be irreparably harmed, absent an injunction. Not only is the threatened injury vaguely defined, no evidence indicates that any potential injury is irreparable. Plaintiffs have not substantiated any concrete future harms they are substantially likely to suffer if the Court does not issue a temporary restraining order.

It is well-established that a harm qualifies as "irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)). A court may issue injunctive relief "to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the

merits." *Miss. Power & Light Co.*, 760 F.2d at 627. Generally, "[c]oncrete evidence must be provided to demonstrate the requisite injury." *Lockheed Martin Corp. v. Howmet Aerospace Inc.*, No. 4:23-CV-01204-O, 2023 WL 9503470, at *2 (N.D. Tex. Dec. 29, 2023) (citing *Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 599–600 (5th Cir. 2023)). "Assertions of injuries not supported by evidence fail to establish clearly irreparable harm." *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 869 (W.D. Tex. 2001) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). Here, Plaintiffs allude to (i) injuries that "could" occur[19] and (ii) the November 30 expiration of the PPH-ServiceTitan service arrangement, which causes Plaintiffs concern in terms of accessing H&E's operating history, but that Plaintiffs admit "does not expressly announce deletion of H&E's data."[20] Plaintiffs' speculation is not concrete evidence of *irreparable* harm. *See Fed. Exp. Corp. v. Robrad, L.L.C.*, No. 3:14-CV-2152-B, 2014 WL 3880806, at *3 (N.D. Tex. Aug. 7, 2014) (denying motion for preliminary injunction where movant "adduced no evidence, in the form of affidavits or other [materials] . . . demonstrat[ing] that its risk of injury is more than speculative"); *H.D. Vest Inc., v. H.D. Vest Mgmt. & Servs., LLC*, No. 3:09-CV-00390-L, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) (denying motion for preliminary

[19] Plaintiffs indicate that H&E's banking and Intuit accounts support the business's daily operations and "[i]nterference with account access[, etc.] could interrupt those functions and damage established business relationships." ECF No. 8-1 at 9. Plaintiffs fail to specify the source of any access Defendants have to the business banking account to which Plaintiffs maintain access. What is more, service interruption or damaged business relationships ostensibly may be remedied by money damages.

[20] ECF No. 8-1 at 9. Plaintiffs' contention that the expiration of the ServiceTitan-PPH agreement creates an urgent risk of disruption to H&E's access to its operating records and services unless an authorized transaction is completed before November 30 appears to be the most urgent injury alleged, but Plaintiffs nevertheless concede that expiration (in more than three weeks' time) of the PPH service arrangement does not mean H&E's data will be deleted.

injunction where "Plaintiff pointed to no evidence in the record to show a threat of irreparable injury" and "merely state[d]" that its harm is imminent). Plaintiffs thus fail to demonstrate the second element for preliminary injunctive relief.

The Fifth Circuit "has made it clear in [its] decisions that preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four[-]prong test for obtaining the injunction." *Plains Cotton Co-op Ass'n of Lubbock, Tex., v. Goodpasture Comput. Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987) (citations omitted). Having failed to satisfy either element one or two is sufficient to deny the instant motion. Regardless, like elements one and two, Plaintiffs fail to support the balance of the equities and public interest elements. It is hornbook law that "[e]vidence that goes beyond the unverified allegations of the pleadings and motions papers must be presented to support or oppose a motion for a preliminary injunction." 11A Charles Alan Wright et al., Federal Practice & Procedure § 2949 (3d ed.). Such evidence is missing here. The only evidence here is Ms. Beckham's affidavit, which does not offer clear support for the balance of the equities or public interest factors. Plaintiffs' request for a TRO must be denied. *Accord, e.g.*, *Four Six Servs., LLC v. Dyer*, No. A-16-CA-1269-SS, 2016 WL 9409013, at *2 (W.D. Tex. Dec. 29, 2016) (denying motion for temporary restraining order because movant "introduced no evidence concerning the third and fourth requirements for granting a temporary restraining order"); *Alderwoods Grp., Inc. v. Riemann*, No. 1:05-CV-563, 2006 WL 8452704, at *2 (S.D. Miss. Mar. 15, 2006) (denying motion for preliminary injunction where plaintiff "failed to produce any

evidence whatsoever touching on" the third and fourth preliminary-injunction requirements).

## III. CONCLUSION

Plaintiffs fail to satisfy Rule 65(b)(1)(A) or (B) when both are essential prerequisites to issuing a temporary restraining order of the sort requested here, that is, without notice. Furthermore, on this briefing and record, Plaintiffs fail to provide support for entitlement to "immediate protection" of their banking and accounting systems and fail to indicate that their access to their business records on the ServiceTitan platform cannot be restored through resort to less extraordinary measures, or at least upon notice to Defendants and following an opportunity to be heard. Among other shortcomings, Plaintiffs fail to offer concrete evidence clearly demonstrating the requisite injury. Rule 65 and the case law applying it demands more. Plaintiffs have failed to carry their burden to unequivocally show the need for this Court to issue a TRO to restrain Defendants from taking (or compel them to take) certain actions before the Court could hold a hearing on a properly supported application for preliminary injunctive relief. Having failed to clearly support their application for preliminary injunctive relief, they will have an opportunity to re-urge a motion that complies with the rules and case law. Accordingly,

**IT IS ORDERED** that Plaintiffs' motion[21] for a temporary restraining order and preliminary injunction is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that any renewed motion shall comply with

[21] ECF No. 8.

the Federal and Local Rules.[22]

New Orleans, Louisiana, this 6th day of November, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

[22] Counsel shall consult the Federal and Local Rules and ensure that their future filings comply therewith. For example, in addition to complying with the applicable Federal Rules, counsel neglected to but shall comply with LR 5.4 respecting certificate of service and LR 7.2 respecting filing a notice of submission. If counsel wishes to be heard on any re-urged motion before the available submission date, counsel shall file, along with its motion, memorandum in support, and evidence (*see* LR 7.4), a notice of submission selecting the available submission date (*see* LR 7.2), and then separately shall file a motion requesting expedited hearing in accordance with LR 7.3.